UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDON PAINE,<br><br>      Plaintiff,<br><br>  v.<br><br>IKEA HOLDING US, INC., IKEA US RETAIL, LLC, AND IKEA NORTH AMERICA SERVICES, LLC<br><br>      Defendants. | Civil Action No.: 19-0723-AB |

## BRIEF IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

  Defendants IKEA Holding US, Inc., IKEA US Retail LLC, and IKEA North America Services, LLC (collectively, "Defendants") hereby submit the following Brief in Support of their Partial Motion to Dismiss Plaintiff's First Amended Complaint.

## I.  INTRODUCTION

  Courts require plaintiffs to plead non-conclusory facts sufficient to render their claims plausible. This is nowhere more important than in the context of claims of disparate impact discrimination, where a plaintiff must identify a *specific* facially non-discriminatory employment policy or practice that disproportionately impacts a protected category of employee. This is "not a trivial burden," *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 101 (2008), and Plaintiff has failed to meet it here.

  On February 21, 2019, Plaintiff Brandon Paine ("Plaintiff") filed a Complaint against Defendants alleging: (1) disparate treatment on behalf of himself and other similarly situated co-

workers[1] in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") (Count I); and (2) disparate impact/promotion rates on behalf of himself and other similarly situated co-workers in violation of the ADEA (Count II). (Doc. 1). In support of Count II, Plaintiff claimed that "Defendants utilize practices, policies, and procedures that disparately impact Older Workers, including Plaintiff." (*Id.* at ¶ 134). But Plaintiff never specifically identified what "practices, policies, and procedures" disparately impact Older Workers, including Plaintiff.

Instead, "upon information and belief" only, Plaintiff asserted that seven different generic categories of alleged practices resulted in a statistically significant disparity in the promotion rates of Older Coworkers:

> [1] Defendants' identification of 'potential,' and/or [2] its promotion policy, and/or [3] its consideration of age in connection with diversity, and/or its [4] consideration of age in employment decisions, and/or [5] its leadership development programs, and/or [6] its policies and practices in connection with requiring relocation and/or offering relocation support, and/or [7] its application and job selection policies, practices, and/or processes have resulted in a statistically significant disparity in the promotion rates of its Older Workers.

[*Id.* at ¶ 135].

Because Plaintiff failed to identify a *specific* facially neutral practice, policy, or procedure claimed responsible for the alleged disparity—thus failing to place Defendants on notice of what, precisely, Plaintiff claims caused the alleged impact—on April 30, 2019, Defendants moved to dismiss Plaintiff's ADEA disparate impact claim, or in the alternative for a more definite statement. (Doc. 10). In response, on May 21, 2019, Plaintiff filed a First Amended Complaint (hereinafter "FAC"). (Doc. 17).

---

[1] Plaintiff defines allegedly similarly situated co-workers as "all those current and former employees of IKEA in the United States (a/k/a IKEA US) who, since January 24, 2018, were age 40 or over and denied promotion." (Doc. 1 at p. 2). Plaintiff refers to them as "Older Workers." *Id.*

The FAC cures none of the defects present in the Complaint. Instead, Plaintiff similarly contends "upon information and belief" that Defendants' "use of one or more" of the following policies and practices resulted in a statistically significant disparity in the promotion rates of Older Workers:

> . . . Defendants' assessment and identification of the potential of its employees; and/or (b) . . . . Defendants' policies regarding relocation; and/or (c) . . . Defendants' selection of employees for participation in its leadership development programs; and/or (d) . . . Defendants' initial screening interview by its Recruiting Department of internal candidates for posted positions; and/or (e) . . . Defendants' diversity policy.

(Doc. 17 at ¶ 145). Plaintiff's shotgun alternative pleading still muddles his claims well below the standard required by *Iqbal*[2] and *Twombly*[3].

Plaintiff's attempt to identify a specific neutral policy in support of his disparate impact claim suffers from another fatal defect. As he must, Plaintiff claims that the amorphous "policies" he depicts in Count II are "neutral;" that is, they are not designed or intended to discriminate. But, he also claims that these very same "policies" were mechanisms of company-wide *intentional* discrimination. As a matter of law, Plaintiff cannot rely on alleged intentionally discriminatory practices to support a claim of unintentional disparate impact. The Court should dismiss Count II.

## II.    FACTUAL BACKGROUND[4]

Plaintiff was hired by IKEA US Retail LLC on or about February 16, 2004. (Doc. 17. at ¶ 69). He currently serves as an Active Selling Leader (a management position) in the New Haven,

---

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

[4] Because under Rule 12(b)(6), a court must accept all factual allegations as true in deciding a motion to dismiss, Defendants are asserting facts as alleged in the Complaint, but reserve the right to dispute these facts at a later time.

Connecticut store. (*Id.* at ¶ 70). Because he has not obtained positions he has applied for, Plaintiff alleges he was discriminated against on the basis of his age. (*Id.* at ¶¶ 80, 91, 97, 103, 109, 116, 122, 129, 135, 137).

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint fails "to state a claim upon which relief can be granted," it must be dismissed. Fed. R. Civ. P. 12(b)(6). "'The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint.'" *Rivers v. Trinity Che*, Civ. A. No. 18-4343, 2019 WL 1047495, at *2 (E.D. Pa. March 5, 2019) (quoting *Nelson v. Temple Univ.*, 920 F.Supp. 633, 634 n.2 (E.D. Pa. 1996)). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the claim must be "plausible on its face," requiring "factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged . . . [raising] more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The Third Circuit explained that to determine the sufficiency of a complaint under the standard set forth in *Iqbal* and *Twombly*:

> First, the court must tak[e] note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of the truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). To survive a motion to dismiss, a complaint "must do more than allege the plaintiff's entitlement to relief" – it must "show" such entitlement through factual allegations. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

## IV.     ARGUMENT

### A. Plaintiff's ADEA Disparate Impact/Promotion Rates Claim Must be Dismissed for Failure to State a Claim.

To state a claim for disparate impact under the ADEA, a complaint must specifically identify a facially neutral policy alleged to cause a statistically significant age-based disparity. *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 69 (3d Cir. 2017). Plaintiff may not simply gesture toward a "generalized policy," like "promotion," and claim it causes a disparate impact. *Hanrahan v. Blank Rome LLP*, 142 F. Supp. 3d 349, 353 (E.D. Pa. 2015). Instead, a plaintiff is responsible for "'isolat[ing] and identify[ing] the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'" *Karlo*, 849 F.3d at 70 (quoting *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (emphasis in original)). The Supreme Court has underscored that "identifying a specific practice is not a trivial burden." *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 101 (2008).

If a complaint fails to identify a specific facially neutral discrete practice, the ADEA disparate impact claims must be dismissed. *Smith*, 544 U.S. at 228. In *Craig v. Thomas Jefferson University*, Civ. A. No. 08-4165, 2009 WL 2038147, at *8 (E.D. Pa. July 7, 2009), District Judge Yohn dismissed the plaintiff's disparate impact claim because the plaintiff failed to sufficiently allege discrimination under a disparate impact theory. *Id.* The court held there "is absolutely no reference to a specific allegedly facial neutral employment policy that had a disparate impact." *Id.* Indeed, the plaintiff's "reference to disparate impact is merely a label and conclusion that does not

give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (internal quotations and citation omitted). Because the complaint did not "permit the court to infer more than the mere possibility of misconduct," the disparate impact claim was dismissed. *Id.*

*Knox v. PPG Industries, Inc.*, Civ. A. No. 15-1434, 2016 WL 279004 (W.D. Pa. Jan. 22, 2016), questioned whether the plaintiff was "sufficiently precise in her attempt to isolate the particular employment practice(s) responsible for the alleged disparity." *Id.* at *6. In the complaint, the plaintiff alleged that the "subject policies, patterns, practices" regarding "promotion" and "performance review ratings" resulted in actionable disparate impact against women. *Id.* The court recognized that each of the "processes" identified by the plaintiff had "multiple components," and she failed to allege which ones she was challenging or that they were incapable of separation for analysis such that they were one employment practice. *Id.* at *7. In *Verney v. Dodaro*, the Middle District concluded that the plaintiff's disparate impact claim was doomed because she never identified a specific employment policy, apart from "promotion," that resulted in a disparate impact to her protected class. 872 F.Supp. 188, 193 n. 4 (M.D. Pa. 1995).

In *Voltz v. Coca-Cola Enterprises Inc.*, 91 F. App'x. 63 (10th Cir. 2004), the Tenth Circuit affirmed the dismissal of the plaintiff's disparate impact claim for failing to identify any specific discrete employment practice or policy. *Id.* at 73. The court concluded that instead of identifying a specific employment practice, the plaintiff's complaint made general allegations that Coca-Cola's "employment and hiring practices" cause unlawful discrimination. *Id.* at 74. Similarly, in *Arguello v. Conoco, Inc.*, the Fifth Circuit affirmed dismissal of the plaintiff's disparate impact claim because it generically indicted the company's "policies" without specifically identifying a single, specific policy alleged to cause a statistical disparity. 207 F.3d 803, 813 (5th Cir. 2000).

Here, Plaintiff fails to specifically identify a discrete neutral practice that had a disparate impact on Older Workers, including himself. Instead, he makes it a guessing game by listing five different generic categories of ambiguous multi-component practices, like "polices regarding relocation" and the company's "diversity policy," similar to the "employment and hiring practices" deemed insufficient in *Voltz,* which does not give Defendants "fair notice of what the . . . claim is and the grounds upon which it rests." *Craig*, 2009 WL 2038147, at *8. *See also Hanrahan*, 142 F. Supp. 3d at 354 (holding "simply because [the plaintiff] refers to his own generalized observation as a 'practice' or 'policy' does not make it so" and instead the plaintiff "recites his own theory").

And Plaintiff compounds his jeopardy by listing the generic processes he assails *both* conjunctively and disjunctively. According to Plaintiff, there is a disparate impact caused by "one *or* more of each" of five generic practices. None of these general practices, standing alone, are sufficiently specific to place Defendants on notice of what, precisely, Plaintiff claims caused the alleged impact. In other words, according to Plaintiff, it *could* be one general, multi-component practice that causes the alleged impact, or it *could* be several, or it *could* be all. This shotgun, hide-the-ball approach will not do.[5] Because Count II does not permit this Court to infer more than the mere possibility of misconduct, it should be dismissed.

### B. Plaintiff Claims The Policies He Indicts in His Disparate Impact Claim are Actually Mechanisms of *Intentional* Discrimination.

Also fatal to Plaintiff's disparate impact claim is his failure to allege facially neutral policies. *See Allen v. Sch. Reform Comm'n*, 2017 WL 467411, at *2 (E.D. Pa. Feb. 3, 2017)

---

[5] The Third Circuit "has a policy against Plaintiffs using a 'shotgun pleading approach' . . . and requires civil cases to be plead with considerable specificity." Bartol v. Barrowclough, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017) (quoting *Hynson v. City of Chester Legal Dep't*, 864 F.2d 1026, 1031, n. 13 (3d Cir. 1988). This is to ensure the defendant is provided with sufficient notice of the claims asserted and not left to guess. *Hynson*, 864 F.2d at 1031 n. 13.

(dismissing ADEA disparate impact claim that alleged the defendant "systematically promoted assistant principals and principals who are younger than 40 years of age over existing assistant principals who are over the age of 45 years old" because the policy was facially discriminatory, not facially neutral). *See also Ingram v. Vanguard Grp., Inc.*, Civ. A. No. 14-3674, 2015 WL 4394274, at *21 (E.D. Pa. July 17, 2015) (granting motion to dismiss disparate impact claims because "managing out" older employees is a type of intentional, not facially neutral, discrimination); *Healey v. Southwood Psychiatric Hosp.*, 78 F. 3d 128, 131 (3d Cir. 1996) (concluding an analysis under disparate impact is inappropriate where the plaintiff claims injury based on a facially discriminatory policy").

In *McNeil v. Greyhound Lines, Inc.*, this Court dismissed the plaintiff's disparate impact claim because the plaintiff asserted in his complaint that the defendant's grooming policy was *not* gender neutral. 982 F. Supp. 2d 447, 451 (2013) (Brody, J.). Because the plaintiff asserted that the policy he claimed caused a disparate impact was not neutral, it could not plausibly state a disparate impact claim. *Id.*

Similarly, in *Sztroin v. Pennwest Industrial Truck, LLC*, Civ. A. No. 17-665, 2017 WL 4355575, at *8 (W.D. Pa. Oct. 2, 2017), the Western District granted the defendant's motion to dismiss the plaintiff's disparate impact claim for failure to state a claim. The court held that the "purported existence of a facially neutral policy is also undermined by the more specific allegations in [the] Complaint which are incorporated by reference into the disparate impact claim and make clear that the policy of which Plaintiff complains was one of intentional discrimination." *Id.* Because the plaintiff alleged the policies were *intentionally* discriminatory, the court concluded the plaintiff had a straightforward disparate treatment claim and failed to state a cause of action for disparate impact. *Id.*; *see also Zawacki v. Realogy Corp.*, 628 F. Supp. 2d 274, 281 n. 4 (D.

Conn. 2009) ("where the employment practices supporting the Plaintiff's disparate impact claims are the employment practices supporting the disparate treatment claims," they should be dismissed because it is "not permissible because it provides a means for the Plaintiff to avoid establishing the subjective intent requirement for her disparate treatment claims").

A similar conclusion sprang from *Lasko v. Emerald Coal Res.,* Civ. A. No. 10-0117, 2010 WL 3829375 (W.D. Pa. Sept. 24, 2010), as the Western District dismissed the plaintiff's disparate impact ADEA claim because the complaint "never address[ed] any neutral practice with the Defendants but rather, categorically allege[d] four 'specific work place policies, practices, or procedures, which are *specifically age based.*'" *Id.* at *6 (emphasis in original).  The court stated that the "neutral policy must *by its nature* and not its application impact a protected class more harshly than persons that are not members of the protected class at issue," and the plaintiff did not plead sufficient facts to support that conclusion.  *Id.* (emphasis supplied).

In this case, Plaintiff's disparate impact claim suffers the same flaw.  For Count II, Plaintiff incorporated by reference "the foregoing paragraphs of this Complaint as if fully set forth herein." Doc. 17 at ¶ 143.  And in those "foregoing paragraphs," Plaintiff enthusiastically characterizes the same policies he claims are neutral in Count II as tools of *intentional* discrimination.  Plaintiff contends Defendant engaged in the following: "leadership development programs as part of a strategy to advance young employees into management positions;" "identifying the 'potential' of [] employees as a proxy to assess promotability in an age-biased manner;" "a promotion policy and/or practice that calls for the consideration of data on internal applicants for management positions, including their age"; and "considers willingness to relocate when screening candidates" *Id.* at ¶ 60.  Plaintiff claims these are all mechanisms of *intentional* discrimination.[6]  *Id.* at ¶¶ 56-

---

[6] For example, Plaintiff alleges that Defendant's "employment policies and/or practices are infected with age bias from the top down and infuses all aspects of its employment decisions."

57, 60-63.  He cannot have it both ways.  As in *McNeil*, *Sztroin*, and *Lasko*, Plaintiff's allegations that these practices are vehicles of intentional discrimination prevent him from plausibly claiming they are *neutral* practices that give rise to a disparate impact. The Court should dismiss Count II.

### C. An Amendment to the First Amended Complaint Would be Futile and Inequitable.

Courts permit a curative amendment to dismissed complaints under Rule 12(b)(6), unless an amendment would be inequitable or futile.  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). "In assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).

Because Plaintiff already amended his complaint once, any further amendments would be futile and inequitable to Defendants.  *See Gadling-Cole v. West Chester Univ.*, 868 F. Supp. 2d 390, 401 (E.D. Pa. 2012) ("The Plaintiff has already amended her complaint once in response to the Defendants' first motion to dismiss, which required the Defendants to file a subsequent motion to dismiss.  The amendment failed to cure the above deficiencies and to allow further amendment would be inequitable to the Defendants . . . .").  Because Plaintiff again failed to comply with the *Iqbal* and *Twombly* pleading standard and insists on relying upon the same policies for *both* his disparate treatment and disparate impacts claims, any further amendment would be futile.

### V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Count II of Plaintiff's Complaint.

---

(Doc. 17 at ¶ 61).  He also contends that "[a]ge bias from the top-down infuses and infects the employment decision-making process throughout the entirety of IKEA US."  (*Id.* at ¶ 57).

*/s/ Paul Lancaster Adams*
Paul Lancaster Adams, Esq. (Pa. I.D. #72222)
Brandon R. Sher, Esq. (Pa. I.D. # 314192)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
1735 Market Street, Suite 3000
Philadelphia, PA 19103
(215) 995-2800 (phone)
(215) 995-2801 (fax)
pladams@ogletree.com
brandon.sher@ogletree.com

Dated: June 4, 2019              *Attorneys for Defendants*