# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRANDON PAINE, on behalf of himself individually and on behalf of those similarly situated, | : : : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 2:19-cv-00723-AB |
| v. | : : | |
| IKEA HOLDING US, INC., et al., Defendants. | : : | |

**January 23rd, 2020**                                                        **Anita B. Brody, J.**

## MEMORANDUM

Plaintiff Brandon Paine ("Paine") is a 49-year-old employee of IKEA US Retail, LLC ("IKEA"). Paine brings this putative collective action suit alleging that IKEA violated the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), by discriminating against him and other similarly situated employees on the basis of their age.[1]

His First Amended Complaint contains two collective action claims. Count I is an ADEA disparate treatment claim that alleges that IKEA intentionally discriminated against older workers as part of a pattern and practice of favoring younger employees for promotion and training opportunities. Count II is an ADEA disparate impact claim that identifies five policies alleged to have a disparate impact on older workers' promotion rates: (1) IKEA's "assessment and identification of the potential of its employees" ("Potential Policy"), (2) its "policies regarding relocation" ("Relocation Policy"), (3) its "selection of employees for participation in

---

[1] Paine also brings an individual claim under state law. That claim is not before the court on this motion.

its leadership development programs" ("Leadership Development Policy"), (4) its "initial screening interview by its Recruiting Department of internal candidates for posted positions" ("Screening Interview Policy"), and (5) its "diversity policy" ("Diversity Policy"). First Am. Compl. ¶ 145, ECF No. 17.

IKEA moves to dismiss Count II of the First Amended Complaint for failure to state a claim on which relief can be granted. IKEA contends that the policies Paine identifies are not specific enough to support a disparate impact claim. It also argues that Paine fails to allege that the policies are facially neutral because he identifies the same policies as sources of intentional discrimination. For the reasons explained below, I deny IKEA's Partial Motion to Dismiss as to the Potential Policy and the Relocation Policy, without prejudice to IKEA's right to raise the same arguments at the summary judgment stage. I grant the motion as to the other three policies.

## I. LEGAL STANDARD

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must engage in the following analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more

than conclusions, are not entitled to the assumption of truth. Finally, where there
are well-pleaded factual allegations, a court should assume their veracity and then
determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (quoting *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

**II.  DISCUSSION**

"To state a *prima facie* case for disparate impact under the ADEA, a plaintiff must (1) identify a specific, facially neutral policy, and (2) proffer statistical evidence that the policy caused a significant age-based disparity." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 69 (3d Cir. 2017). IKEA contends that the policies described in Count II of the complaint fail the first prong of this analysis because they are neither specific nor facially neutral.

**A.  <u>Whether the Policies are Adequately Specific</u>**

IKEA first challenges the five policies Paine identifies as insufficiently specific. Paine responds that he has alleged policies that are specific enough at this initial, pre-discovery phase. The Potential Policy and the Relocation Policy are specific enough to survive a motion to dismiss. The Leadership Development Policy, Screening Interview Policy, and Diversity Policy are not.

In ADEA cases, "it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is 'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'" *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)) (emphasis in *City of Jackson*). The petitioners in *City of Jackson* challenged a pay plan with multiple components. The pay plan was too general to constitute a specific employment practice. "[P]etitioners ha[d]

done little more than point out that the pay plan at issue [was] relatively less generous to older workers than to younger workers," and had "not identified any specific test, requirement, or practice within the pay plan that ha[d] an adverse impact on older workers." *Id.* A "'specific employment practice' might be a set of 'subjective criteria' such as hiring based on personal networks or firing based on a manager's subjective sense of who best to retain; or it might be comprised of 'more rigid standardized rules or tests' like height, weight, length-of-service, or performance-based standards." *Davis v. District of Columbia*, 925 F.3d 1240, 1249 (D.C. Cir. 2019) (quoting *Wards Cove*, 490 U.S. at 656).

Construing the complaint in the light most favorable to Paine, the Potential Policy and the Relocation Policy are specific enough to state an ADEA disparate impact claim.

The Potential Policy, IKEA's "assessment and identification of the potential of its employees," is a specific component in a subjective decisionmaking process. The complaint alleges that IKEA used "potential" as a proxy for youth "to assess promotability in an age-biased manner." First Am. Compl. ¶ 60(a), (e). It alleges that IKEA's assessment of employees' "potential" was part of a pattern and practice of intentional discrimination, or, in the alternative, was a facially neutral policy that resulted in a disparate impact on older workers' promotion rates. *Id.* ¶ 68. The "potential" category is one specific criterion, not a "generic categor[y] of ambiguous multi-component practices," as IKEA claims. Partial Mot. to Dismiss 7, ECF No. 18-1.

A fair reading of the complaint also shows that IKEA's Relocation Policy comprises two specific sub-policies. Paine alleges that IKEA asks all applicants about their willingness to relocate and considers willingness to relocate in deciding whom to promote, even for positions that do not require relocation. *See* First Am. Compl. ¶¶ 45, 60(p). He also alleges that, "to the

extent that a relocation requirement does not discourage or eliminate older applicants, IKEA US may rescind offers of domestic relocation assistance . . . ." *Id.* ¶ 60(p). Again, he alleges that these policies were part of a pattern or practice of intentional discrimination, or, in the alternative, had a disparate impact on older workers. The two relocation policies of favoring applicants who are willing to relocate and rescinding relocation assistance offers are specific employment practices that could be shown to have a disparate impact on older workers—for instance if older workers have less willingness or ability to move than younger workers.

The remaining three policies—the Leadership Development Policy, the Screening Interview Policy, and the Diversity Policy—are too "generalized" to constitute specific employment practices. *City of Jackson*, 544 U.S. at 241. Paine does not isolate which aspects of IKEA's "selection of employees for participation in its leadership development programs," "initial screening interview by its Recruiting Department of internal candidates for posted positions," or "diversity policy" caused a disparate impact. First Am. Compl. ¶ 145. As IKEA points out, these are "generic categories of ambiguous multi-component practices." Partial Mot. to Dismiss 7. Those allegations do not meet the standard of identifying a "specific test, requirement, or practice within the [policy] that has an adverse impact on older workers." *City of Jackson*, 544 U.S. at 241.

**B.  Whether the Policies are Facially Neutral**

IKEA also moves to dismiss Count II of the complaint on the ground that Paine has failed to allege facially neutral policies. It objects that Paine identifies the same policies as channels of both unintentional disparate impact and intentional disparate treatment. "As a matter of law," IKEA asserts, "Plaintiff cannot rely on alleged intentionally discriminatory practices to support a claim of unintentional disparate impact." Partial Mot. to Dismiss 3. Paine responds that the law

permits him to argue disparate impact and disparate treatment as alternative theories of liability based on the same set of facts. Paine is correct, assuming the complaint includes allegations that can support both theories. Because the First Amended Complaint does so, Paine has properly argued disparate impact as an alternative theory of liability based on the Potential and Relocation Policies.

Federal Rule of Civil Procedure 8 allows a party to plead in the alternative and to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2), (3). Many courts have recognized that the same set of facts can give rise to a disparate impact and a disparate treatment case. *See, e.g.*, *City of Jackson*, 544 U.S. 228, 231 (petitioners brought disparate treatment and disparate impact claims based on the same policy); *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1188 (10th Cir. 2006) (recognizing claims that "were brought under both disparate-impact and disparate-treatment theories"); *Mozee v. Am. Commercial Marine Serv. Co.*, 940 F.2d 1036, 1039 (7th Cir. 1991) (petitioners attempted to prove "claims of class-wide discrimination by either the disparate treatment or disparate impact methodology"), *supplemented on denial of reh'g*, 963 F.2d 929 (7th Cir. 1992); *Wheeler v. City of Columbus*, 686 F.2d 1144, 1150 (5th Cir. 1982) ("The same set of facts giving rise to a disparate treatment case can also be structured to make out a disparate impact case.").

IKEA erroneously argues that because Paine has alleged that the policies constitute disparate treatment—intentional discrimination—those policies cannot be facially neutral. But intentional discrimination need not be facial discrimination. "The disparate treatment theory can be further subdivided into two subtheories: facial discrimination and pretextual discrimination." *Healey v. Southwood Psychiatric Hosp.*, 78 F.3d 128, 131 (3d Cir. 1996). "The second theory applies when an employer adopts what appears to be a facially neutral policy, but one which a

plaintiff contends is a 'pretext' for forbidden discrimination." *Hayes v. Shelby Mem'l Hosp.*, 726 F.2d 1543, 1547 (11th Cir. 1984), *disapproved on other grounds by Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Johnson Controls, Inc.*, 499 U.S. 187, 197-98 (1991).

A facially neutral policy can therefore be a mechanism of intentional or unintentional discrimination. Most of the cases IKEA cites are inapposite because they deal with facial discrimination, not pretextual discrimination. IKEA is correct that plaintiffs cannot state a disparate impact claim based on a *facially* discriminatory policy like a grooming policy that establishes different hair-length standards for men and women. *See McNeil v. Greyhound Lines, Inc.*, 982 F. Supp. 2d 447, 448, 451 (E.D. Pa. 2013). It is incorrect in concluding that plaintiffs cannot state a disparate impact claim based on a facially neutral policy that is also alleged to be a pretext for intentional discrimination.

In this case, Paine argues that facially neutral policies were either pretext for intentional discrimination or mechanisms of unintentional discrimination. IKEA's Potential and Relocation Policies are facially neutral: they do not use age as an explicit factor in promotion decisions. Because the policies Paine identifies are facially neutral, he has properly alleged in the alternative that the policies are mechanisms of either disparate treatment or disparate impact.

## III. CONCLUSION

For the above reasons, I deny the Partial Motion to Dismiss as to the Potential Policy and Relocation Policy, and grant the motion as to the Leadership Development Policy, Screening Interview Policy, and Diversity Policy.

_S/ ANITA B. BRODY, J._____<br>
ANITA B. BRODY, J.

Copies **VIA ECF** on 1/23/20:                  Copies **MAILED** on _____ to: