**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANK DONOFRIO, | : | |
| *on behalf of himself individually* | : | |
| *and on behalf of those similarly situated,* | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 2:18-cv-00599-AB |
| v. | : | |
| IKEA US RETAIL, LLC | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| | : | |
| WILLIAM V. ANTONELLI, JR., | : | |
| *on behalf of himself individually* | : | |
| *and on behalf of those similarly situated,* | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 2:19-cv-01286-AB |
| IKEA HOLDING US, INC., | : | |
| IKEA US RETAIL, LLC, and | : | |
| IKEA NORTH AMERICA SERVICES, LLC, | : | |
| Defendants. | : | |

| | | |
|---|---|---|
| | : | |
| BRANDON PAINE, | : | |
| *on behalf of himself individually* | : | |
| *and on behalf of those similarly situated,* | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 2:19-cv-00723-AB |
| IKEA HOLDING US, INC., | : | |
| IKEA US RETAIL, LLC, and | : | |
| IKEA NORTH AMERICA SERVICES, LLC, | : | |
| Defendants. | : | |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS**
**AGAINST DEFENDANTS FOR SPOLIATION OF EVIDENCE AND VIOLATION**
**OF THE COURT'S APRIL 29, 2022 COURT ORDER (ECF NO. 295)**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………..iii

I.    INTRODUCTION………………………………………………………..…..…1

II.   BACKGROUND………………………………………………………………...2

    A. Named Plaintiff Frank Donofrio Brings Putative ADEA Collective Action Complaint Against IKEA Alleging Systemic Age Discrimination……………….2

    B. The Court in August, 2018, Ordered IKEA To "Look and Look and Look" for Documents Evidencing the Company's Age Bias and to Produce Them Before The Deadline For Filing For Conditional Certification in *Donofrio*……………...….3

    C. IKEA Opposed Conditional Certification While -- We Know Now -- Withholding Documents That Undermined Its Arguments Opposing Conditional Certification And In Violation Of The Court's August, 2018, Order……………………………4

    D. After The Court Conditionally Certified The Collective Action in *Donofrio*, and then conditionally certified *Paine* and *Antonelli*, IKEA Again Resisted Discovery On Grounds The Court Had Already Rejected……………………………………5

    E. The Court In April, 2022, Ordered IKEA To Search Emails………………………5

      1. The Parties negotiated custodians, time periods, and search terms…………..6

      2. The Court rejected IKEA's argument that searching the emails of the identified custodians would be too burdensome and ordered IKEA to search the emails……………………………………………………………………...8

      3. IKEA produced zero emails from certain custodians it had been required to search…………………………………………………………………………...10

      4. After months of obfuscation, IKEA finally admitted that it deleted the emails………………………………………………………………………...11

      (a) IKA's purported explanation for its deletion of the emails from key custodians is neither on point nor credible……………………………….13

      (i) IKEA counsel's representations during negotiations and opposing production indicate that IKEA deleted the emails after the Court ordered their production……………………………………………………...14

      (ii) Even if deleted prior to the Court's Order, the emails were deleted by IKEA when IKEA had a duty to preserve them………………………14

i

5.  IKEA produced in <u>2022</u> documents that IKEA was required by Court Order to produce by September, <u>2018</u> (*i.e.*, before the deadline for filing for conditional certification) and which undermined the arguments IKEA made to oppose conditional certification……………………………………………………...18

(a)  The ESI produced by IKEA in 2022, while damming in its evidence of systemic age bias, included documents indicating that there were in the email files of custodians Ixtabalan, Brody, Olafsson, and Stein a trove of additional material evidence probative of IKEA's systemic age bias…………………………………………………………………………20

III.   ARGUMENT………………………………………………………………...24

A.  The Court Is Authorized To Sanction IKEA Under Fed.R.Civ.P. 37(b)(2), its inherent authority, and/or Fed.R.Civ.P. 37 (e)(2) ………………………………25

1.  Fed.R.Civ.P. 37(b)(2)………………………………………………………...25

2.  Court's Inherent Authority………………………………………………...26

3.  Fed.R.Civ.P.37(e)(2) …………………………………………………...28

(a)  Spoliation occurred by IKEA's deletion of emails after the Court ordered IKEA to search for and produce them…………………………………...28

(i)  IKEA was under a duty to preserve the emails when the loss occurred…………………………………………………………...29

(ii)  The lost ESI was within the scope of the duty to preserve……………29

(iii)  The information was lost because the party failed to take reasonable steps to preserve it…………………………………………………...29

(iv)  The ESI does not exist in other places…………………………………………………………...30

B.  IKEA's Deletion Of The Emails Was Done In Bad Faith And Prejudicial To Plaintiffs…………………………………………………………………………30

C.  The Court Should Impose Severe But Not Case Dispositive, Sanctions Against IKEA…………………………………………………………………………..33

IV.   CONCLUSION…………………………………………………………………35

# TABLE OF AUTHORITIES

**Cases**

Ansley v. Wetzel,
  2023 U.S. Dist. LEXIS 2054 (Jan. 5 2023 M.D. Pa.) ............................................................ 28

Billman v. Easton Area Sch. Dist.,
  2022 U.S. Dist. LEXIS 140666 (E.D. Pa. Aug. 8, 2022) ....................................................... 14

Bistrian v. Levi,
  448 F. Supp. 3d 454 (E.D. Pa. 2020) ............................................................................... 27, 30

Brewer v. Quaker State Oil Ref. Corp.,
  72 F3d 326 (3d Cir. 1995) ......................................................................................................... 27

Bull v. UPS,
  665 F.3d 68 (3d Cir. 2012) .................................................................................................. 27, 28

GN Netcom, Inc. v. Plantronics, Inc.,
  930 F.3d 76 (3d Cir. 2019) ........................................................................................................ 28

Harris v. City of Phila.,
  47 F.3d 1311 (3d Cir. 1995) ...................................................................................................... 27

International Brotherhood of Teamsters v. United States,
  431 U.S. 324 (1977) .................................................................................................................. 25

Karsch v. Blink Health Ltd., No. 17-CV-3880
  2019 U.S. Dist. LEXIS 106971 (S.D.N.Y. June 20, 2019) .................................................... 13

Mazur v. Southwestern Veterans Ctr.,
  2019 U.S. Dist. LEXIS 132258 (W.D. Pa., Aug. 7, 2019) ............................................... 27, 28

Micron Tech., Inc. v. Rambus Inc.,
  917 F. Supp. 2d 300 (D. Del. 2013) ......................................................................................... 32

Schmid v. Milwaukee Elec. Tool Corp.,
  13 F.3d 76 (3d Cir. 1994) .......................................................................................................... 28

Zubulake v. UBS Waarburg, LLC,
  220 F.R.D. 212 (S.D.N.Y. 2003) .............................................................................................. 15

## I.        INTRODUCTION.

After months of negotiating email custodians and search terms, and over IKEA's objection that production would be unduly burdensome, the Court on April 29, 2022, ordered IKEA to produce electronically stored information ("ESI") responsive to Plaintiffs' document requests by conducting a review of the documents contained in the email files of, *e.g.,* Nabeela Ixtabalan (Country People & Culture Manager *i.e.,* Chief Human Resources Officer ("CHRO") – IKEA US), Sari Brody (IKEA Global Head of Equality, Diversity & Inclusion), Kristie Olafsson (Human Resources/Recruitment Manager, who filed a charge of age discrimination against IKEA which IKEA never produced), and a selection of store managers.   Based on IKEA counsel's representation that it would take <u>eight months</u> to complete, the Court ordered ESI production on a monthly rolling basis to be completed no later than December 31, 2022.  By January, 2023, IKEA had: 1) produced documents evidencing IKEA's systemic age discrimination that the Court had ordered it to produce before September 28, **<u>2018</u>** (*i.e., before conditional certification*); and 2) produced **<u>zero</u>** documents from "key player" custodians Ixtablan, Brody, Olafsson, and store managers, including Christof Stein.   After months of obfuscation when asked if IKEA searched the emails of the custodians as ordered, IKEA's counsel on April 6, 2023, **finally admitted that <u>IKEA deleted e-mail files of custodians that it had been ordered to search</u>.**

This is not just a case of inadvertent loss of ESI because IKEA failed to preserve it.  IKEA's deletion of e-mails from the top-level actors at the heart of its communication and implementation of IKEA Global's unlawful age "diversity" goals was <u>in direct defiance of this Court's Order</u>.  The destruction of evidence obviously relevant to *second stage certification* and Plaintiffs' ability to proceed as a collective action under the pattern or practice framework should

not be abided by the Court.  Accordingly, Named Plaintiffs Frank Donofrio,[1] William Antonelli,[2] and Brandon Paine[3], on behalf of themselves individually and those similarly situated ("Plaintiffs"), now move the Court pursuant to Fed. R. Civ. P. 37(b)(2), the inherent authority of the Court and, in the alternative,  Fed.R.Civ.P. 37(e)(2), for sanctions against Defendants, IKEA US Retail, LLC, IKEA Holding US, Inc., and IKEA North America Services, LLC (collectively, "IKEA"), for their spoliation of material evidence in violation of the Court's April 29, 2022 Order.[4]

## II.    BACKGROUND.

Set forth below is a brief summary of important background facts and procedural history of the case.  It is supported by the Declaration of undersigned counsel for Plaintiffs, Susan Saint-Antoine (attached hereto as Ex. A) and accompanying exhibits (referred to as "A-#"), which are incorporated herein by reference.

### A.    Named Plaintiff Frank Donofrio Brings Putative ADEA Collective Action Complaint Against IKEA Alleging Systemic Age Discrimination.

Named Plaintiff Frank Donofrio in November, 2016, filed a class EEOC Charge of age discrimination against IKEA, alleging that the retail giant has engaged in a pattern or practice of systemic age discrimination.[5]  In February, 2018, Donofrio filed a putative collective action Complaint.[6] The Court entered an Order by which the parties would conduct discovery on Donofrio's individual case and in aid of conditional certification (the first step of the two step

---

[1] *See Donofrio, et al. v. IKEA US Retail, LLC* (E.D. Pa. 2:18-cv-00599-AB).

[2] *See Antonelli, et al. v. IKEA Holding US, Inc.* (E.D. Pa. 2:19-cv-01286-AB).

[3] *See Paine, et al. v. IKEA Holding US, Inc.* (E.D. Pa. 2:19-cv-00723-AB).

[4] *Donofrio,* ECF 295; *Paine,* ECF 247; *Antonelli,* ECF 220 .  Hereinafter, when referencing an identical document filed on the same day in all three cases, citation is to *Donofrio* only.

[5] *See* Saint-Antoine Declaration ¶ 4. Ex. A-1.

[6] *Donofrio,* ECF 1.

2

process used by courts in the Third Circuit to proceed as an ADEA collective action).[7]  The

Court set a deadline of October 5, 2018, for Donofrio to file a motion for conditional

certification.[8]

> **B.     The Court in August, 2018, Ordered IKEA to "Look and Look and Look"
> for Documents Evidencing the Company's Age Bias and to Produce Them
> Before the Deadline for Filing for Conditional Certification in *Donofrio*.**

During the first/conditional certification discovery phase, IKEA resisted providing

relevant discovery.[9]  Named Plaintiff Donofrio in May, 2018, served upon IKEA a First Set of

Document Requests (with "document" explicitly defined to include electronically stored

information including emails), which requested, among other things:

- All documents concerning and/or that state or reflect a requirement and/or
  preference for younger employees in management positions.
- All documents concerning and/or that state or reflect a requirement and/or
  preference for younger employees in leadership development programs.
- All documents concerning and/or that state and/or reflect IKEA personnel goals in
  terms of age.
- All documents concerning and/or that state or reflect succession strategies in
  terms of age or "high potential."[10]

IKEA on July 3, 2018, answered in response to each request that it "has no documents in its

possession, custody or control."[11]  Named Plaintiff on August 3, 2018, filed a letter motion to

compel.[12]  The Court on August 22, 2018, conducted a teleconference on Plaintiff's Motion to

Compel.[13]   The Court stated:  "**I think you're entitled to any documents that relate to their

descriptions of as to age and that relates to the United States.**  That's not – now that I hear

---

[7] *See* Saint-Antoine Declaration ¶ 5; *Donofrio,* ECF 14.
[8] *See* Saint-Antoine Declaration ¶ 6; *Donofrio,* ECF 14.
[9] *See* Saint-Antoine Declaration ¶ 7; *Donofrio,* ECF 24.
[10] *See* Saint-Antoine Declaration ¶ 8.
[11] *See* Saint-Antoine Declaration ¶ 9.
[12] *See Donofrio* ECF 24.
[13] *See* Saint-Antoine Declaration ¶ 10; Ex. A-2 (*Donofrio* ECF 31 (transcript)).

this – that's not overbroad.  …  It sounds to me that that's something that you're entitled to in a case like this."[14]  The Court ordered IKEA to "look and look and look" for the documents, and even warned IKEA that it could be subject to an adverse inference at trial if it didn't produce what it should be producing. [15]  On August 22, 2018, the Court issued its Order[16] requiring IKEA to produce by September 7, 2018:

- documents, if they exist, related to IKEA Group's leadership development programs, such as the Global Young Potentials Program; and

- any documents relating to IKEA Group's age-based personnel goals that apply to U.S. employees, such as the 'US Goals' document attached to Plaintiff's motion.

### C.  IKEA Opposed Conditional Certification While -- We Know Now -- Withholding Documents that Undermined Its Arguments Opposing Conditional Certification and in Violation of the Court's August, 2018, Order.

Named Plaintiff Donofrio moved on October 5, 2018, to conditionally certify his case as an ADEA collective action.[17]  In opposition to Plaintiff's Motion, IKEA argued, among other things, that the "Global Young Potentials" programme was irrelevant, and told this Court emphatically that the age-based personnel goals were "stale" and that IKEA had retracted them years before.[18]  For example, IKEA's Opposition to Conditional Certification stated:

> Plaintiff attempts to paint IKEA in a negative light by referencing a document describing age diversity goals it had for upper store management to include some younger members, but neglects to tell this Court that **IKEA abandoned those diversity goals by 2012** – *i.e.,* years before any promotion decision at issue in this case – and retracted them without taking any action to implement them.

---

[14] *See* Ex. A-4 (Tr. at 14, emphasis added.)
[15]  Ex. A-4 Tr. at 13:22-14:24, emphasis added.)
[16] *See* Saint-Antoine Declaration ¶ 11; Ex A-3 (*Donofrio,* ECF No. 29).
[17] *See Donofrio,* ECF 35, 36.
[18] *See* Saint-Antione Declaration ¶ 12; *Donofrio,* ECF 40.

(Emphasis added.) [19]

**D.      After the Court Conditionally Certified the Collective Action in *Donofrio*, and then Conditionally Certified *Paine* and *Antonelli*, IKEA Again Resisted Discovery on Grounds the Court Had Already Rejected.**

On May 16, 2019, the Court issued its Order and Opinion conditionally certifying the *Donofrio* case as an ADEA collective action; [20] The Court on October 1, 2019, entered a consent Order for joint and consolidated discovery in *Donofrio* and the two related ADEA putative action cases (*Paine* and *Antonelli*). [21]  By Joint Stipulation and Order dated January 23, 2020, the Court conditionally certified *Paine* and *Antonelli* to proceed as ADEA collective actions. [22]

After a period during which the parties and the Court addressed issues pertaining to Notice and requirement of attorney representation for opt-ins, the Court on January 11, 2021, issued a Scheduling Order for second stage/merits discovery. [23]   The Named Plaintiffs served discovery in an orderly fashion, by issuing generally uniform discovery requests pertaining to the individual opt-ins and "joint and consolidated" discovery pertaining to issues of  IKEA's systemic age discrimination. [24]  IKEA again resisted discovery without proper basis and, in many instances failed to provide substantive answers and asserted objections that the Court had already rejected. [25]

**E.      The Court in April, 2022, Ordered IKEA to Search Emails.**

---

[19] *Donofrio*, ECF 41 at p. 4.
[20] *Donofrio*, ECF No. 70, 71.  The *Donofrio* "class" period includes those older employees rejected for promotion from January 20, 2016, through November 29, 2017.
[21] *See Donofrio*, ECF 90.
[22] *See Paine,* ECF 43; *Antonelli*, ECF 36.  The *Paine* "class" period includes those older employees rejected for promotion from January 24, 2018 through June 1, 2019 and the *Antonelli* "class" period includes those older employees rejected for promotion from February 24, 2018 through June 1, 2019.
[23] *Donofrio*, ECF 199.
[24] *See* Saint-Antoine Declaration ¶ 15.
[25] *See* generally Saint-Antoine Declaration ¶ 16, and *Donofrio,* ECF 223.

The Court addressed Plaintiffs' Motion to compel at an in-person conference on October 27, 2021.  The parties discussed, and the Court agreed, that many of the document requests could be answered by IKEA by means of ESI search.[26]  The plan was for the parties to negotiate the search parameters, IKEA to conduct the search, and then for Plaintiffs to review the ESI produced before addressing further the sufficiency of IKEA's interrogatory responses and then conducting depositions.[27]  The Court issued an Order[28] granting in part, and denying in part, Plaintiffs' Motion to compel as stated on the record.

### 1.     The parties negotiated custodians, time periods, and search terms.

Plaintiffs' counsel spent many hours over the course of several months negotiating the parameters of an ESI search, the details of which are set forth in the various update letters submitted to the Court by Plaintiffs' counsel.[29]  Plaintiffs' counsel sent a list of proposed e-mail custodians to IKEA counsel on December 16, 2021, which included, among others, Nabeela Ixtabalan, Sari Brody, Kristi Olafsson, and a cross section of store managers.[30]  After several follow ups from Plaintiffs' counsel asking for a response/counter proposal, IKEA responded by letter dated January 31, 2022.[31]  In the letter, IKEA counsel proposed a different set of custodians, including some former employees. The letter from IKEA's counsel did not state that any of the emails of certain custodians had been deleted.  Rather, IKEA asserted that it would be unduly burdensome to produce the emails of the custodians proposed by Plaintiffs' counsel.  In

---

[26] *See Saint-Antoine* Declaration ¶ 17.  It was agreed during the Court conference that the following requests from Plaintiffs' Joint and Consolidated Documents Requests (First Set) would be addressed by ESI search:  Nos. 11, 12, 14, 22, 27-29, 34-38, 42, 45-46, 49-51, 53, 55-57, 59, 62-68, 70-73, 78-82, and 85.

[27] *See* Saint-Antoine Declaration ¶ 18.

[28] *See Donofrio* ECF 256*.*

[29] *See, e.g.,* Saint-Antoine Declaration ¶ 19; *Donofrio*, ECF 264.)

[30] See *Donofrio,* ECF No. 264.

[31] *See* Declaration ¶ 21; Ex. A- 5.

response, Plaintiffs' counsel sent on February 1, 2022, an email[32] that specifically asked IKEA counsel:

> **When you say that the dat[a] is not "reasonably accessible based on the cost to Defendant," can you clarify whether the "inaccessibility" is limited to cost or whether you are asserting that they are not actually available to be searched?  For example, are the email files for the custodians in Plaintiffs' proposal available for the time period to be searched?  Or are they unavailable for some reason, such as lack of preservation or in an inaccessible format?**

In a February 1, 2022, status letter to the Court, IKEA counsel told the Court that it had undertaken significant efforts to investigate the amount of data Plaintiffs' proposal would entail and the cost of its search and production.[33] Nowhere in its letter did IKEA say or imply that the emails of the custodians proposed by Plaintiffs' counsel had been deleted or could not be produced.

The Court conducted the conference on February 2, 2022, which included a discussion of ESI.[34]  IKEA argued again that they were able to search the emails of custodians as proposed by Plaintiffs, but that it would cost too much. There was no suggestion that any custodian's emails had been deleted following their departure from IKEA or otherwise.[35]

The Court on February 4, 2022, entered an Order[36] which, among other things, ordered: "No later than Friday, February 4, 2022, Defendants shall provide substantive responses to the questions identified in Julie A. Uebler's email dated February 1, 2022, seeking clarification of

---

[32] *See* Declaration ¶ 22; Ex- A- 10.
[33] *Donofrio,* ECF 200.
[34] *See* Saint-Antoine Declaration ¶  24; Ex- A- 11 (ECF 281, 281, Transcript).  Among other things, in response to the Court's question of "What do you mean by custodian," IKEA counsel answered:  "The individuals.  If you are the custodian, Your Honor, it would be your, your email in box for ten years."  Tr. at p. 29.
[35] *See* Ex- A-11 (Tr. at pp. 28-30).
[36] *Donofrio,* ECF No. 279.

Defendant's ESI review proposals as set forth in Traer E. Cundiff's letter dated January 31, 2022."

IKEA counsel by letter dated February 4, 2022[37], responded to the above quoted question posed in Attorney Uebler's February 1, 2022, email as follows:

> My reference to inaccessibility regarding the data was relating to the costs. Our position is consistent with Rule 26(b)(2)(B) and case law acknowledging the same, *i.e.*, **ESI is inaccessible based on undue cost.** Data for 126 custodians for a 5.5 year period, as Plaintiffs have requested, is not reasonably accessible based on the undue burden resultant from the cost, time, and effort involved in collecting processing, hosting, and reviewing 5.5 years of data from 126 custodians.

(Footnotes omitted, emphasis added.) IKEA counsel's letter also noted that it had considered the total volume of data for custodians identified by Plaintiff.

The parties continued to negotiate custodians, time periods, and search terms. In their March 4, 2022 counterproposal,[38] **<u>IKEA proposed</u> searching the emails of custodians including Ixtabalan, Brody, Olaffson, and Stein, *albeit* for time periods shorter than as proposed by Plaintiffs**.[39]

> **2.     The Court rejected IKEA's argument that searching the emails of the identified custodians would be too burdensome and ordered IKEA to search the emails.**

The Court considered the parties' competing proposals during an April 14, 2022 conference.[40] During the conference, among other things, IKEA's counsel again argued that it would be too costly to search the emails of the custodians for the time periods set forth in

---

[37] *See* Saint-Antoine Declaration ¶ 25; Ex. A-12.
[38] *See* Saint-Antoine Declaration ¶ 26; Ex. A-13.
[39] *See* Saint-Antoine Declaration ¶ 26; Ex.A-26.  IKEA's proposal included Nabeela Ixtabalan (from 1.1.16 to 1.30.18), Sari Brody (from 1.1.16 to 6.1.19), Olafsson (from 1.1.16 to 3.31.18), and New Haven store manager Christof Stein (who they said was the Store Manager during the entire "class" period from 1.1.16 to 6.1.19).
[40] *See* Saint-Antoine Declaration ¶ 27; Ex. A-14 (Transcript, Donofrio ECF 296.)

Plaintiffs' proposal.[41]  Again, there was no suggestion by IKEA's counsel that the emails of

certain custodians had been deleted.  On the contrary, IKEA's counsel specifically addressed the

existence and cost of searching archived data.  IKEA's counsel, Wendy Miller, told the Court:

- MS. MILLER:  Your Honor, that – our aim has been to come up with a reasonable proposal.  And for the store managers I wanted to make one point and I think Your Honor has drilled down on this issue.  That when Plaintiff's say that it's 22 custodians, it's not.  It's many, many more.  They have 22 stores.  **And for each individual we're talking about email data that is stored, archived overseas. And for each individual there is certainly a burden and a cost in identifying their data, pulling it, decompressing it, processing it**.  So it's not -- [42]

- MS. MILLER:  In contemplating the costs and contemplating **archived data from individuals who we –** Plaintiffs have already acknowledged have no role in the decisions that are at issue in the case.[43]

- MS. MILLER:  **Well, and Your Honor, we're not saying that we can't have the HR people.  That was included in our proposal.  The question is do we have to pull archived data from well before the class period when these decisions weren't being made**.  And if we are talking about that, I think that's where Your Honor really needs to have an understanding of the impact that has on the cost and the time that will be involved in the review.  And the burden of including those extra years of archived data in this process.[44]

The Court considered – and rejected -- IKEA's arguments that it would be too costly to

search and produce the emails of custodians identified by Plaintiffs and for the time periods

proposed, and ordered IKEA to search and produce them.  The Court was clear, stating:  "…I

will see that it's done consistent with what we just said, that **this is a decision that has been

made by the Court and will be followed**.  So that's where I am.  I know you want – **you**

---

[41] See Ex. A-14.
[42] *See* Ex. A-14 (Tr. at 18:9-18)(emphasis added).
[43] *See* Ex. A-14 (Tr. at 21:20-23)(emphasis added).
[44] *See* Ex. A-14 (Tr. at 27:3-11)(emphasis added).

**don't like it, Ms. Miller, and that's just too bad.**"[45]  The Court ordered Plaintiffs' counsel to

prepare,  and IKEA's counsel to approve, a proposed Order reflecting what was decided during

the conference.[46]

The Court on April 29, 2022, entered the Order[47] which stated in pertinent part:

> It is hereby ORDERED that Defendants shall review and produce
> electronically stored information ("ESI") in response to Plaintiffs'
> Consolidated Joint Document Requests (Set One)(Plaintiffs'
> Requests") as set forth herein:
>
>> 1.  Defendants shall produce ESI that is responsive to
>>     Plaintiffs' Requests by conducting a review of the
>>     documents contained in the email files and for the date
>>     ranges identified on the List of Email Custodians
>>     Updated April 14, 2022, attached hereto as Exhibit A."

The "Exhibit A" List of Email Custodians Updated April 14, 2022, included, *e.g.,* Sari Brody

(Global Head of Equality, Diversity and Inclusion) for the time period of 1.1.2014 to 6.1.2019;

Nabeela Ixtabalan (Store Manager/Country People & Culture Manager) for the time period of

1.1.2014 to 1.30.2018; Kristie Colleen (KC) Olafsson (Human Resources/Recruiting Manager)

for the time period of 1.1.2014 to 3.31.2018; and a selection of store managers for the time

periods of 1.1.2014 to 12.31.2015 and 1.1.2016 to 6.1.2019.

Based on IKEA counsel's representation that it would take IKEA <u>8 months</u> to complete

the production[48], the Court ordered IKEA to produce the ESI on a rolling, monthly basis to be

completed no later than December 31, 2022.[49]

### 3.   IKEA produced <u>zero emails</u> from certain custodians it had been required to search.

---

[45] *See* Ex. A-14 (Tr. 29:13-17) emphasis added).
[46] *See* Saint-Antoine Declaration ¶ 28; Ex. A-14.
[47] *See* Saint-Antoine Declaration ¶ 29; Ex A-15  (*Donofrio*, ECF 295).
[48] *See* Ex. A- (Tr. at 34:5-35:11).
[49] *See* Saint-Antoine Declaration ¶ 31; Ex. A-15 (*Donofrio*, ECF 95).

IKEA made a monthly, rolling production of ESI, beginning on May 31, 2022, through December 31, 2022.[50]  The metadata for the ESI includes the identity of the custodian of each particular document.[51]   Based on the metadata of the ESI produced, IKEA produced zero documents from custodians Brody, Ixtabalan, Olafsson and store managers including Christof Stein.[52]

### 4.   After months of obfuscation, IKEA finally admitted that it **deleted** the emails.

On January 20, 2023, Plaintiffs' counsel sent a letter to IKEA counsel asking them, as a preliminary matter, to confirm that the ESI production was completed, and expressing their concern that IKEA's production included **no** documents from custodians Brody, Ixtabalan, and Olafsson.[53] Plaintiffs' counsel asked IKEA counsel to please confirm that each of their emails was searched and explain why no documents were produced.

In or about the week of February 13, 2023, in response to an inquiry during a phone call as to the status of a response, IKEA's counsel responded with words to the effect that they were "working on it."[54] Plaintiffs' counsel suggested getting together in person to sit down and discuss outstanding discovery issues, including this one.[55]

Having still heard no response, Plaintiffs' counsel on February 23, 2023, sent a follow up letter to IKEA's counsel asking for them to please respond to the issue raised in the January 20,

---

[50] *See* Saint-Antoine Declaration ¶ 32.
[51] *See* Saint-Antoine Declaration ¶ 33.
[52] *See* Saint-Antoine Declaration ¶ 34.  Store Manager Christof Stein was not the only store manager custodian from whom zero emails were produced.  He is highlighted here because he was the one specifically identified as an example by Plaintiffs' counsel in communications with IKEA counsel. *Id.* at ¶ 35.
[53] *See* Saint-Antoine Declaration ¶ 36; Ex. A-16.
[54] *See* Saint-Antoine Declaration ¶ 37.
[55] *See* Saint-Antoine Declaration ¶ 37.

2023 letter.[56]  The letter identified Store Manager Christof Stein as another example of a

custodian from whom zero documents were produced and again suggested a meeting to discuss.

On March 1, 2023, Plaintiffs' counsel sent a follow up email to IKEA counsel, asking

again that they respond to the issue.[57]  The email noted that Plaintiffs did not want to file a

motion if IKEA had a good reason for its production of no emails from these custodians, but that

so far, IKEA had not provided one.

On March 9, 2023, Plaintiffs' counsel sent *another* email asking IKEA counsel to please

respond to the issue.[58]  The email noted that IKEA was ignoring our communications and

invitations to discuss, and that, absent explanation, the reasonable inference is that IKEA had no

good explanation for its production of zero emails from these custodians.  It also advised IKEA

counsel that absent confirmation that the emails were searched and responsive documents

produced by March 17, 2023, Plaintiffs would file a motion with the Court.

IKEA counsel finally responded by letter dated March 17, 2023.[59]  The letter was evasive

and misleading, and did not actually answer the question of whether IKEA had in fact searched

the emails of custodians Ixtabalan, Brody, Olafsson and Stein.  Instead, the letter asserted that

IKEA had no obligation to produce duplicate emails (a red herring, not in issue), and stated that

it conducted a review of "reasonably accessible email files" (suggesting that it had not conducted

an email search as ordered).  The letter also stated that it conducted a further search and

produced, as PDFs without metadata, some additional emails.  The metadata from the documents

---

[56] *See* Saint-Antoine Declaration ¶ 38; Ex. A-17.
[57] *See* Saint-Antoine Declaration ¶ 39; Ex. A-18.
[58] *See* Saint-Antoine Declaration ¶ 40; Ex. A-19.
[59] *See* Saint-Antoine Declaration ¶ 14; Ex. A-20.

subsequently produced (following Plaintiffs' counsel's request)  reveals that none was from custodians Brody, Ixtabalan, Olafsson or Stein).[60]

On March 30, 2023, Plaintiffs' counsel responded by letter to IKEA counsel.[61]  Plaintiffs' letter explained that IKEA counsel's letter did not actually address the issue.  Plaintiffs' counsel requested of IKEA's Counsel:  "Please address the issue directly and unequivocally.  Did IKEA search the email files of Brody, Ixtabalan and Olafsson for the time periods specified in the Order?  If yes, were all responsive documents that IKEA has already produced?"

On April 6, 2023, IKEA counsel by letter finally admitted that IKEA had deleted the emails and had <u>not</u> done a search as ordered by the Court.[62] The letter stated:  "Each of the custodians identified above [Ixtabalan, Brody, Olafsson, Stein] departed IKEA and, consequently, their personal storage table (.pst) files[63] were deleted in the regular course of business, based on when that individual departed IKEA.  At the time of the departure, IKEA had no reasonable basis to believe it needed to preserve their email files."

> **(a)    IKEA's purported explanation for its deletion of the emails from key custodians is neither on point nor credible.**

---

[60] IKEA initially produced the handful of additional e-mails as processed PDFs (which do not have the metadata indicating the custodian from whom it was culled).  IKEA's subsequent production of the same documents, with metadata, indicated that none was from custodians Brody, Ixtabalan, Olafsson or Stein. *See* Saint-Antoine Declaration ¶ 42.

[61] *See* Saint-Antoine Declaration ¶ 43; Ex. A-21.

[62] *See* Saint-Antoine Declaration ¶ 44; Ex. A-22.

[63] "A PST file, or personal storage table (.pst) file, is a Microsoft Outlook Data File that stores a user's Outlook data for POP3, IMAP and web-based mail accounts, including all mail folders and the items within the folders, such as emails, email attachments, to do items and appointments, contacts and more." *Karsch v. Blink Health Ltd.*, No. 17-CV-3880 (VM) (BCM), 2019 U.S. Dist. LEXIS 106971, at *8 n.2 (S.D.N.Y. June 20, 2019) (quoting Personal Storage Table (PST), Webopedia, https://wvvw.webopedia.com/TERM/P/personal_storage_table_pst.html (last visited June 20, 2019)).

IKEA's letter attempts to frame and explain its deletion of the emails as an inadvertent loss of ESI caused by its regular business practices.  However, when read carefully, the explanation does <u>not</u> say that the emails were deleted at the time of the employee's departure. Rather, it says they were deleted <u>based on</u> when that individual departed IKEA.  In fact, counsel's explanation does not actually say when IKEA deleted the emails, nor does it deny that it had a reasonable basis to believe they must be preserved <u>at the time of deletion</u>.

> **(i)     IKEA counsel's representations during negotiations and opposing production indicate that IKEA deleted the emails <u>after</u> the Court ordered their production.**

IKEA counsel's representations made during negotiations and opposing production indicate that the emails from these custodians *existed* and that IKEA deleted the emails <u>after</u> the Court ordered their production.[64]  These emails were the subject of supposedly significant investigation by IKEA, consideration of their volume, and argument by IKEA counsel that their production would be "inaccessible" <u>not</u> because they no longer existed, but because their collection and production would be too costly.  Indeed, IKEA <u>included these custodians in its own list of proposed custodians</u> for a shorter time period.  IKEA counsel argued at length during the April 14, 2022, conference about the existence of the emails in archived data and the cost of searching and producing them.  The Court heard IKEA's argument about the burden of production, rejected it, and ordered IKEA to produce these emails.

> **(ii)    Even if deleted prior to the Court's Order, the emails were deleted by IKEA when IKEA had a duty to preserve them.**

---

[64] Plaintiffs presume, of course, that IKEA counsel's statements regarding the existence of the email were accurate, consistent with counsel's duty to ensure complete collection of documents for discovery and to "act with reasonable diligence."  *Cf. Billman v. Easton Area Sch. Dist.*, 2022 U.S. Dist. LEXIS 140666 (E.D. Pa. Aug. 8, 2022)(discussing sanctions under Fed.R.Civ.P. 37(c) and an attorney's discovery duties and professional obligations, cting to Model Rules of Pro. Conduct, Rule 1.3 (Am. Bar Ass'n 2021) and 204 PA Code sec. 1.3 (2021)).

Moreover, even if the emails were deleted prior to the Court ordering their production, IKEA's document destruction practices as part of the regular course of business are not on point. Once a party reasonably anticipates litigation, it must suspend its regular document destruction policies and issue a litigation hold to ensure the preservation of relevant documents.  *E.g.,* *Zubulake v. UBS Waarburg, LLC,* 220 F.R.D. 212 (S.D.N.Y. 2003). IKEA's duty to preserve the emails of these custodians arose well before each custodian's departure from IKEA (which, as noted before, is a date sometime *before* the unknown date when IKEA deleted their emails).

Nabeela Ixtablan (IKEA US Chief Human Resources Officer) departed IKEA in August, 2020.[65] By that time, *e.g,*:

- **Named Plaintiff Donofrio filed an EEOC class charge of age discrimination, alleging systemic age discrimination.** The charge refers to a meeting which Ms. Ixtabalan attended during which employees complained of age discrimination. (November 15, 2016)
- **IKEA received Donofrio's perfected Charge of Discrimination from the EEOC, as well as its form 131A letter with a notice to reserve documents**. (December 15, 2016)
- Former IKEA Human Resources Manager Susan Nasci filed an EEOC Charge of age discrimination alleging, *e.g.,* that during a time period which included Ms. Ixtabalan as CHRO, IKEA created an atmosphere where older managers were disfavored and younger managers, employees and applicants were given preference based on their age. (August 29, 2017)
- IKEA employee L.K. filed an EEOC Charge of age discrimination against IKEA, alleging IKEA engaged in a pattern or practice of age discrimination. (February 12, 2018)
- Ms. Ixtabalan was identified by name in Plaintiff Donofrio's putative ADEA collective action complaint, alleging a pattern or practice of systemic age discrimination. (Feb. 2018)
- Former IKEA Human Resources Recruiting Manager Kristie Colleen (KC) Olafsson departed IKEA and sometime thereafter filed an EEOC charge of age discrimination (EEOC 520-2018-0551).
- The parties in *Donofrio* filed a Report of the Parties' Rule 26(f) Conference.  It states, *e.g.*, that discovery will be conducted on IKEA's alleged pattern and practice of age discrimination and culture of age bias. (May 4, 2018)

---

[65] *See* Saint-Antoine Declaration ¶ 45; Ex A-23.

- **The Parties' Rule 26(f) Conference Report acknowledges that "[t]he parties are aware of their obligation to preserve electronically stored information." (May 4, 2018)**
- Ms. Ixtablan was identified by name as a witness Named Plaintiff Donofrio intended to depose in the Parties' Rule 26(f) Conference Report.   (May 4, 2018)
- Named Plaintiff Donofrio's Rule 26 Initial Disclosures identified Ms. Ixtabalan. (May 22, 2018)
- IKEA's Initial Disclosures identified "Any witness disclosed by Plaintiff."  (May 25, 2018)
- Named Plaintiff Donofrio had requested that IKEA produce documents (explicitly defined to include ESI, including emails) of systemic age discrimination and policies of HR reflecting same. (May, 2018)
- IKEA had been instructed by the Court that it must "look and look and look" for and produce documents with descriptions of age as relates to the US, and even warned of the possibility of the Court giving an adverse inference jury instruction at the time of trial if they were hiding them from production.  (Aug. 2018)
- The Court entered an Order requiring IKEA to produce documents referring to IKEA Group's age-based personnel goals that apply to US employees.  (Aug. 2018)
- Plaintiffs' counsel raised the issue of spoliation with IKEA counsel and requested copies of litigation hold letters, if any.  (July 27, 2018)
- IKEA counsel stated that it would produce Ms. Ixtabalan for deposition.  (July 27, 2018)
- The Court conditionally certified *Donofrio* as an ADEA collective action.  (May, 2019)
- Named Plaintiff Donofrio filed a motion for sanctions against IKEA, with allegations that IKEA engaged in spoliation of evidence. (Nov. 7, 2018)
- The Court conditionally certified *Paine* and *Antonelli* as ADEA collective actions.  (Jan. 2020)
- IKEA employee Barbara Rose filed a class/pattern or practice EEOC charge of age discrimination. (Feb. 25, 2020)
- IKEA employee Octavia Washington filed a class/pattern or practice EEOC charge of age discrimination. (Mar. 2020)
- IKEA employee Jack Shannon filed a class/pattern or practice EEOC charge of age discrimination. (Mar. 2020)
- IKEA employee Evan Ganz filed a class/pattern or practice charge of age discrimination against IKEA. (Mar. 2020)
- IKEA employee Linda Branson filed a class/pattern or practice charge of age discrimination against IKEA. (Mar. 2020)
- IKEA employee Monica Rausert filed a class/pattern or practice charge of age discrimination against IKEA (Apr. 2020)
- IKEA employee Darlene Hughes filed a a class/pattern or practice charge of age discrimination against IKEA. (Apr. 27, 2020)

- Former IKEA employee Lori Thompson filed a charge of age discrimination with the Maryland Commission on Civil Rights, dual filed with the EEOC, which alleged systemic age discrimination. (May 28, 2020)
- IKEA employee Thomas Isaak filed a class/pattern or practice of age discrimination against IKEA. (July 13, 2020)
- IKEA had been named as a defendant in at least six lawsuits alleging company-wide, systemic age discrimination in violation of the ADEA, including:
  - *Donofrio, et al. v. IKEA U.S. Retail, LLC* (E.D. Pa. 2:18-cv-00599-AB)
  - *Gorbeck, et al. v. IKEA North America Services LLC, et al.* (E.D. Pa. 2:18-03651-AB)
  - *Nasci v. IKEA, North America Services, LLC d/b/a IKEA* (W.D. Pa., 2:18-cv-01643-CB).
  - *Parker, et al. v. IKEA North America Services, LLC* (E.D. Pa. 2:18-cv-03261-AB)
  - *Paine, et al. v. IKEA Holding US, Inc. et al.* (2:19-cv-00723-AB)
  - *Antonelli, et al.  v. IKEA Holding US, Inc., et al* (2:19-cv-01286-AB)

*See* Saint-Antoine Declaration ¶¶45-46.

  Sari Brody (IKEA Global Head of Diversity & Inclusion) departed IKEA in June 2020.[66]

By that time, in addition to all of the foregoing events (except the Isaak charge) listed above,

*e.g.*:

- Named Plaintiff Donofrio's Motion for Sanctions specifically addressed IKEA's age "diversity" goals.  (Nov. 2018)
- Named Plaintiff Donofrio's Reply Brief in support of his Motion for Conditional Certification identifies Ms. Brody by name and referred to her explicit statement of "focus on young potentials."  (Dec. 2018)
- Ms. Brody was identified by name in *Paine's* Complaint. (Feb. 1, 2019)
- Ms. Brody was identified by name in *Antonelli's* Complaint. (Mar. 27, 2019)

*See* Saint-Antoine Declaration ¶¶ 47-48.

  Kristie Olafsson (Human Resources / Recruiting Manager) departed IKEA in March,

2018.[67]  Because IKEA failed to produce a copy of Ms. Olafsson's Charge of age discrimination

(which alone would have triggered IKEA's duty to preserve her documents),  Plaintiffs do not

know if she brought the charge prior to her departure. In any event, by the time of her departure,

---

[66] *See* Saint-Antoine Declaration ¶ 47; Ex A-37.
[67] *See* Saint-Antoine Declaration ¶ 49; Ex A-38.

IKEA was subject to litigation for its personnel policies and company-wide systemic age discrimination.

Christof Stein (Store Manager) departed IKEA sometime in 2019.[68]  By that time, IKEA had been named in several ADEA putative collective actions alleging company-wide systemic age discrimination.  Further, IKEA in 2018 had gathered Declarations from Store Managers across the country to support its opposition to conditional certification in *Donofrio*, which certainly indicates an awareness that store managers had relevant information.[69]

5.    **IKEA produced in <u>2022</u> documents that IKEA was required by Court Order to produce by September, <u>2018</u> (*i.e.,* before the deadline for filing for conditional certification) and which undermined the arguments IKEA made to oppose conditional certification.**

After being instructed to "look and look and look," IKEA failed to produce documents that were required by Court Order to have been produced by September 7, 2018 – *i.e.,* <u>before</u> the deadline for filing for conditional certification. For example, and without limitation:

- The Court ordered IKEA to produce by September 7, 2018, "documents, if they exist, related to IKEA Group's leadership development programs, such as the Global Young Potentials Program."



   ▪ IKEA must have been aware of this email in September, 2018, because it was culled from the same custodian (Simon Lowes)

---

[68] *See* Saint-Antoine Declaration ¶ 50; Ex A-39.
[69] *See* Donofrio ECF 41-3.
[70] *See* Saint-Antoine Declaration ¶ 51; Ex A-40 (IKEA-043065, "Confidential")  .

from whom IKEA culled the *attachments* to the e-mail, which
were produced in September, 2018.[71]

- The Court ordered IKEA to produce by September 7, 2018, "any documents
relating to IKEA Group's age-based personnel goals that apply to U.S.
employees, such as the "US Goals" document that was attached to Plaintiff's
motion."



Moreover, IKEA produced in <u>2022</u> many documents which, even if arguably not

*required* to have been produced by the Court's August, 2018 Order, *should* have been produced

before conditional certification briefing but were improperly withheld.  For example, Named

Plaintiff Donofrio requested in May 2018, "[a]ll documents concerning and/or that state or

reflect the consideration of age in employment decision.[73]"  IKEA for the first time in April,

<u>2022</u>, produced a Diversity & Inclusion Workshop. Leaders power point presentation created

April 9, 2015 that

Ex. A-  at IKEA-022620  (emphasis added).

---

[71] *See* Saint-Antoine Declaration ¶ 52;
[72] *See* Saint-Antoine Declaration ¶ 53; Ex A-41 (IKEA-032986 – 033010, "Confidential").
[73] *See* Saint-Antoine Declaration ¶ 56.
[74] *See* Saint-Antoine Declaration ¶ 55; Ex. A-42 (IKEA-022582 – 02267, "Confidential")

IKEA's failure to produce documents first requested in May, 2018 (i.e., before the briefing and decision on conditional certification ) demonstrates IKEA's willingness to wrongfully withhold material evidence that would undermine its argument to oppose conditional certification and prevent *Donofrio* from proceeding to trial as an ADEA collective action.

By way of further example, as noted above, IKEA offered sworn Declarations from some of its store managers, including Jeff O'Shaughnessy, in its Opposition to Donofrio's Motion for Conditional Certification.[75] Mr. O'Shaugnessy signed a Declaration on September 24, 2018, but IKEA did not produced it in response to Named Plaintiff Donofrio's request for witness statements pertaining to the litigation or his allegations.[76] Mr. O'Shaugnessy swore, among other things: "No one has ever directed me to hire younger managers in my store.  I've never heard of anything like that….I've never personally experienced or witnessed any kind of discrimination on the basis of age at IKEA."  Turns out, quite the opposite was true.  IKEA produced, in 2022, documents showing, *e.g.*,: 1) that IKEA US Retail Deputies had agreed that "Diversity" would be a FY 15 Store Manager Goal[77] 2) "diversity" plans were to be integrated into "succession" plans[78]; and 3) a "diversity" goal on which Mr. O'Shaughnessy would be evaluated, and which was facilitated by Human Resources, was "% of young, under 25 within management team."[79]

> **(a)** **The ESI produced by IKEA in 2022, while damning in its evidence of systemic age bias, included documents indicating that the email files of custodians Ixtabalan, Brody, Olafsson, and Stein contained a trove of additional material evidence probative of IKEA's systemic age bias.**

---

[75] *See Donofrio*, ECF 41-3.
[76] Named Plaintiff Donofrio requested that IKEA produce all "documents concerning any witness statements pertaining to this litigation or the allegations referred to in this litigation." *See* Saint-Antoine Declaration ¶ 56.
[77] *See* Saint-Antoine Declaration ¶ 57; Ex A-43 (IKEA-090614 – 090617, "Confidential").
[78] *See* Saint-Antoine Declaration ¶ 58; Ex A-44 (IKEA-068510 – 068511, "Confidential")
[79] *See* Saint-Antoine Declaration ¶ 59; Ex A-45 (IKEA-069345-069349, last names and day and month of Birth Date redacted for electronic filing).

While the ESI documents produced by IKEA in 2022 are certainly damning in their evidence of systemic age bias, they are also indicative of a trove of material evidence that IKEA was required to produce, but instead *deleted*, in clear violation of the Court's April 29, 2022 Order.

IKEA deleted emails that go to the very heart of this case:  communications from IKEA Global to IKEA US on unlawful age "diversity" goals disseminated by IKEA US Human Resources throughout stores nationwide via pervasive messaging on "diversity" and integrated into all aspects of employment, including succession and the management review process and a focus on "young potentials."

Custodian Sari Brody was the Global Head of Diversity & Inclusion during the "class" period.  As expected given her position, and as confirmed by documents produced, Ms. Brody was very involved with the communication and implementation of IKEA Global's unlawful age based "diversity" goals.  For example, she was a presenter at the July, 2014 Diversity Workshop.[80]  Further, IKEA produced a Diversity SWOT (Strengths, Weaknesses, Opportunities, Threats) Analysis that was authored by Sari Brody (but culled from custodian Jacqueline DeChamps) and last modified on September 7, 2014.[81]  Ms. Brody's analysis identified as "Weakness" that "Retail Store Managers lacks Diversity in all ages because 65% of Retail Store Managers are 45 or Older, only 13.5% of Steering Group are younger than 35, and less than 1% of Retail Exempt Managers are younger than 25.  The document includes "SMART Goals for FY14 – FY 2018," including improving the "diversity" of age of Exempt Managers by, among other things, increasing those younger than 34 from 31% to 40% and decreasing from 62% to 40% managers between the ages of 35-54.

---

[80] *See* Saint-Antoine Declaration ¶ 60; Ex. A-46 (IKEA-033955 – 033958, "Confidential").
[81] *See* Saint-Antoine Declaration ¶ 61; Ex. A-47 (IKEA-048618 – 048629, "Confidential").

By way of further example, Ms. Brody was the author of a document (culled from the DEI Sharepoint) entitled "Recruitment with diversity in mind/IT Delivery FY 14."[82] Among other things, the document states:



It is certainly reasonable to assume that other smoking gun evidence of systemic company age bias would be in Ms. Brody's emails.

Custodian Nabeela Ixtabalan was the Chief Human Resources Officer – IKEA US.  As expected given her position, she too was involved in the communication and implementation of IKEA's age discriminatory personnel goals.  IKEA produced, for example, an e-mail from custodian Store Manager Frank Briel, that contained in the underlying email string a November 2, 2015, email from Nabeela Ixtabalan (then Country Human Resources Manager – IKEA US) with a subject line of "D&I Update & Next Steps.[83]  Although the underlying Nabeela Ixtabalan e-mail is responsive to Plaintiffs' Joint & Consolidated Document Request Nos. 38 and 50, and hits the time period and search terms as ordered, it was not produced by IKEA.  That it appears within the Briel email is insufficient.  For one thing, the Ixtabalan e-mail as contained in the Briel email does not contain a "to" line, which would show those employees who received the communication from Ixtabalan regarding diversity.  Moreover, the Ixtabalan email states, "we have completed a full recap of our Diversity & Inclusion efforts from Fy 14 until present.  This

[82] *See* Saint-Antoine Declaration ¶ 62; Ex. A-48 (IKEA-023379 – 02385, "Confidential").
[83] *See* Saint-Antoine Declaration ¶ 63; Ex.  A-49(IKEA-069601).

has allowed us to gain a clear understanding of what we have accomplished, where we are today, and what still remains to be done." This email indicates that communications were exchanged as part of the recap of Diversity efforts, and regarding what remained to be done.

By way of further example, IKEA on July 5, 2022, produced for the first time a November 9, 2017



It is again reasonable to assume that other smoking gun evidence of systemic company age bias would be in Ms. Ixtabalan's emails.

<u>Custodian Kristie Olafsson</u> was IKEA US HR Recruitment Manager during the "class" period. IKEA produced, for example and without limitation, an October 8, 2014 e-mail from Jacqueline DeChamps to Ms. Olafsson, among others, culled from a custodian other than Ms. Olafsson.[85]

The Court's Order required IKEA to search and produce emails from custodian Olafsson during this time period. Based on this document, it appears that she would have had documents reflecting communications and her work on this analysis.

---

[84] *See* Saint-Antoine Declaration ¶ 64; Ex. A-50 (IKEA 045109-045111, "Confidential").

[85] *See* Saint-Antoine Declaration ¶ 65 and Ex. A-51 (IKEA065239 – 062540, "Confidential").

[86] *See* Saint-Antoine Declaration ¶ 65 and Ex. A-51 (IKEA-062539, attaching IKEA-062540, "Confidential").

Although IKEA was ordered to produce complaints of age discrimination[87], Ms. Olafsson's age discrimination Charge was not produced by IKEA, which suggests that she was privy to additional expressions of IKEA's systemic age bias.  It is reasonable to assume that other smoking gun evidence of systemic company age bias would be in Ms. Olafsson's emails.

Custodian Christof Stein was the Store Manager in New Haven during the "class" period. IKEA produced on August 31, 2022, an e-mail to Mr. Stein (culled from a custodian other Mr. Stein) with the subject line of ██████████████████████████████████████ It is reasonable to assume that other smoking gun evidence of systemic company age bias would be in Mr. Stein's emails.

## III.    ARGUMENT

IKEA has demonstrated its willingness – even in defiance of Court Order – to keep from Plaintiffs material evidence that would undermine its opposition to these three cases proceeding to trial as ADEA collective actions.  IKEA did the same at the conditional certification stage, and has done it again now as the cases approach the second stage certification inquiry.

Plaintiffs contend that it was IKEA's standard operating procedure to consider IKEA Global's unlawful age "diversity" goals in connection with selections for leadership development and management level positions.  This was the company's policy of age bias to which all older IKEA employees seeking promotion were subjected, rendering them similarly situated, and the "pattern or practice" of age discrimination whereby the burden at trial shifts to IKEA to

---

[87] *Donofrio,* ECF 266.
[88] *See Saint-Antoine Declaration ¶ 66; Ex. A-52 (IKEA-090196, "Confidential").
[89] *See* Saint-Antoine Declaration ¶ 66; Ex. A-53 (IKEA-90197, excerpt from "Successors" tab, "Confidential").

demonstrate that the older employee was rejected for promotion for lawful reasons. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 360-62 (1977).

IKEA has deleted the emails of the top-level people, Ixtabalan and Brody, who would have communicated and implemented the unlawful age "diversity" goals, likely to each other and to other top level management employees whose emails the Court did not require IKEA to search.  Ixtabalan, Brody and Olafsson were custodians recognized as "key players" whose emails the Court <u>ordered</u> IKEA to search.   As set forth below: A) the Court is authorized to sanction IKEA under Fed.R.Civ.P. 37(b)(2), its inherent authority, and/or Fed.R.Civ.P. 37(e)(2); B) IKEA's deletion of the emails in violation of the Court's Order was done in bad faith and is prejudicial to Plaintiffs; and C) the Court should therefore impose severe, but not case dispositive, sanctions against IKEA.

### A.    The Court Is Authorized to Sanction IKEA Under Fed.R.Civ.P. 37(b)(2), its Inherent Authority, and/or Fed.R.Civ.P. 37(e)(2).

#### 1.    Fed.R.Civ.P. 37(b)(2).

Fed. R. Civ. P. 37(b)(2) authorizes a court to sanction a party for its failure to comply with a discovery order.  It is the *fact* of non-compliance with a court order that triggers sanctions; the non-compliant party's reason for non-compliance goes to the type of sanction to be issued rather than the applicability of the rule in the first place.  *See, e.g.*, Gensler, *Federal Rules of Civil Procedure Rules and Commentary*, Rule 37 at p. 1105 (citing Fed.R.Civ.P. 37 advisory committee's note (1970)).

Rule 37(b)(2)(A) provides that if a party fails to obey an order to provide discovery, the court may issue further just orders, including:

> (i)    Directing that the matters embraced in the order or
> other designated facts be taken as established for

        purposes of the action, as the prevailing party claims;

(ii)    Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
      ***

(vi)    rendering a default judgment against the disobedient party; or

(vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

The decision to impose sanctions is entrusted to the discretion of the court. *See, e.g.*, *Harris v. City of Phila.*, 47 F.3d 1311, 1329-30 (3d Cir. 1995). The court's discretion in imposing a sanction is limited by two standards: First, any sanction must be "just;" second, it must be specifically related to the particular "claim" that was at issue in the order to provide discovery. *Id.*

IKEA should be sanctioned for its defiance of the Court's April 29, 2022 Order. IKEA indisputably failed to search and produce by December 31, 2022, the emails of custodians Brody, Ixtabalan, Olaffson and Stein as required under the Court's April, 2022 Order. The language of the Order (which IKEA counsel approved before it was entered) is clear; and IKEA did not produce by December 31, 2022, *any* emails from custodians Ixtabalan, Brody, Olaffson and Stein.

## 2.    Court's Inherent Authority

Even if a party's action is not in violation of a discovery order (as IKEA's is here), a court has the inherent authority to sanction a party for noncompliance with the rules of discovery or spoliation of evidence. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably

26

foreseeable litigation." *Bistrian v. Levi*, 448 F. Supp. 3d 454 (E.D. Pa. 2020) (quoting *Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004)).

Further, a court may exercise its inherent authority to sanction a party for spoliation of electronically stored information even if Fed.R.Civ.P. 37(e)(2) applies, which authorizes sanctions for loss of ESI that should have been preserved (discussed below). *See, e.g., Mazur v. Southwestern Veterans Ctr.*, 2019 U.S. Dist. LEXIS 132258, *13 (W.D. Pa., Aug. 7, 2019)(citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991)(making clear that "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct").[90]

In order to establish spoliation, it must be shown that: 1) the evidence was in the party's control; 2) the evidence is relevant to the claims or defenses in the case; 3) there has been actual suppression or withholding of evidence; and 4) the duty to preserve the evidence was reasonably foreseeable to the party. *See, e.g., Bull v. UPS*, 665 F.3d 68, 73 (3d Cir. 2012). Courts distinguish between situations where "the spoliation or destruction [of evidence] was intentional, and indicates fraud and a desire to suppress the truth," and those where "the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F3d 326, 334 (3d Cir. 1995).

To determine the appropriate sanction, the court must consider: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the party seeking sanctions; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the aggrieved party and, where the offending party is seriously at fault, will serve to deter such

---

[90] *Contra Bistrian v. Levi*, 448 F. Supp. 3d 454, 465 n. 14 (E.D. Pa. 2020)(stating in *dicta* that if Rule 37(e) applies, it provides the exclusive remedy for the loss of ESI).

conduct by others in the future." *Bull*, 665 F.3d at 73 n. 5; *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994).

Potential sanctions include: dismissal of a claim, or granting judgment in favor of the prejudiced party, suppression of evidence, an adverse inference instruction that the spoliated evidence was harmful to the offending party's case, fines, and attorney's fees and costs. *Mazur*, 2019 U.S. Dist. LEXIS 132258 at *17.

### 3.    Fed.R.Civ.P. 37(e)(2)

Fed.R.Civ.P. 37(e)(2) authorizes sanctions for loss of ESI that should have been preserved.  Assuming the applicability of this section (since the e-mails were "lost" because IKEA intentionally deleted them in defiance of the Court's order), IKEA engaged in spoliation of ESI under Fed.R.Civ.P. 37(e).

To determine which sanctions should be imposed, the court must find either prejudice to the moving party (this entitles them to the "lesser" sanctions of 37(e)(1), with no bad faith required), **or** that the non-moving party acted with the intent to deprive the moving party of the ESI's use in litigation (which shows bad faith, and entitles the affected party to the harsher sanctions of 37(e)(2)). *See Ansley v. Wetzel*, 2023 U.S. Dist. LEXIS 2054, at *4 (Jan. 5 2023 M.D. Pa.); *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 83 (3d Cir. 2019).

### (a)    Spoliation occurred by IKEA's deletion of emails after the Court ordered IKEA to search for and produce them.

The elements of spoliation of ESI are:  1) the spoliating party was under a duty to preserve when the loss occurred; 2) the lost ESI was within the scope of the duty to preserve; 3) the information was lost because the party failed to take reasonable steps to preserve it; and 4) the ESI does not exist in other places. Fed. R. Civ. P. 37(e).  The elements are clearly met here.

(i)      **IKEA was under a duty to preserve the emails when the loss occurred.**

As noted above, IKEA counsel's April 6, 2023 letter does not say *when* IKEA deleted the emails.  However, the conduct and representations made by IKEA's counsel indicate that **the emails <u>existed</u> as of April 4, 2022 and therefore must have been deleted sometime thereafter.**

IKEA obviously had a duty to preserve the emails "when the loss occurred" because the Court ordered IKEA to search the emails and produce responsive documents from them.  Moreover, even if IKEA deleted the emails before the Court ordered the search, IKEA still engaged in spoliation.  As discussed at length, *supra,* the duty to preserve the emails was triggered <u>well before</u> the custodians departed IKEA (and certainly before the unknown date thereafter when IKEA counsel claims they were deleted).

(ii)      **The lost ESI was within the scope of the duty to preserve.**

The "lost" ESI was clearly within the scope of the duty to preserve because the Court ordered IKEA to search the emails and produce responsive documents therefrom.  Moreover, IKEA had reason to believe that these top-level Human Resources managers had evidence relevant to allegations of IKEA's systemic age discrimination.  IKEA stated that it recognized its obligation in the Parties' Rule 26(f) Report.  Further, the Court in August, 2018, told IKEA that documents revealing age based personnel goals were relevant and ordered IKEA to "look and look and look" for them.  Indeed, the Court even warned IKEA specifically that it could face an adverse inference instruction it if withheld such documents from production.

(iii)      **The information was lost because the party failed to take reasonable steps to preserve it.**

The information was obviously lost because IKEA failed to take reasonable steps to preserve it.  IKEA admittedly deleted the emails that the Court ordered it to search.  Moreover, at her deposition in August, 2018, Cathy Blair (who was identified as a witness in the parties Rule 26 Report as well as in Named Plaintiff Donofrio's Initial Disclosures (and by incorporation, into IKEA's as well), testified that she had not gotten a litigation hold letter.

**(iv)     The ESI does not exist in other places.**

The deleted ESI does not exist in other places.  The Court's order to search the emails was not limited to certain sources.  On the contrary, it was a blanket and unequivocal order to search the emails.  Indeed, IKEA's counsel affirmatively argued that the emails were archived overseas (implying their existence) but would be too costly to search.  The Court rejected that argument, noting that IKEA counsel did not like it, and ordered IKEA to search anyway.  Moreover, the April 6, 2023 letter from IKEA counsel states that [in an effort to locate emails sent or received by Ixtabalan, Brody, Olafsson and Stein] it did its due diligence but culled few documents from custodians IKEA had already searched.  If the ESI *were* to exist in other places, then IKEA and its counsel have flouted the Court's Order and should be held in contempt.

**B.  IKEA's Deletion of the Emails Was Done in Bad Faith and Was Prejudicial to Plaintiffs.**

**<u>Bad faith</u>**

Because courts are unable to "examine [a party's] head" to "confirm [whether they] acted in bad faith," courts look to circumstantial evidence to determine intent.  *See, e.g.*, *Bistrian v. Levi*, 448 F. Supp. 3d 454, 475 (E.D. Pa. 2020).

IKEA's bad faith is evidenced here in several ways.

First and foremost, IKEA's deletion of the e-mails was done in explicit defiance of the Court's Order to search them and produce responsive documents from them.

Second, IKEA has demonstrated that it will keep from Plaintiffs material evidence that undermines its arguments to try to stop these cases from proceeding as ADEA collective actions under a pattern or practice burden shifting framework.

Third, if IKEA had deleted the emails before the Court ordered the search, it should not have waited **11 months** to inform Plaintiffs' counsel.

Fourth, if IKEA had deleted the emails before the Court ordered the search, IKEA's counsel had a duty to find this out and not to negotiate for months with Plaintiffs' counsel about cost when the emails had in fact been deleted.

Fifth, IKEA attempted to evade Plaintiffs' inquiries regarding the production of data and then tried to hide the fact that IKEA had deleted the emails.

Sixth, IKEA's explanation is evasive.  It does not even say the date IKEA deleted the emails.

Seventh, IKEA's assertion that it did not have a reasonable belief that it had a duty to preserve the emails when the custodians departed IKEA (in addition to being evasive) simply is not credible.

Eighth, IKEA's explanation that the emails were deleted based on the custodians' date of departure is not credible.  In addition to Ixtabalan, Brody, Olafsson, and Stein, IKEA proposed custodians for custodians to be searched.  Among them was Simon Lowes, who departed IKEA *after* Ixtabalan, Brody and Olafsson, and his emails were apparently not deleted.

Ninth,  IKEA has a demonstrated history of resisting discovery without proper basis.

Tenth, IKEA has a demonstrated history of misrepresenting the non-existence of material evidence.

Eleventh, IKEA deleted the emails even after the Court warned it that it could be subject to an adverse inference at trial.

Twelfth, this is not the first time that IKEA has deleted material evidence in this case. Elizabeth Spencer, the identified decision-maker in Named Plaintiff Donofrio's individual case, deleted her handwritten notes of his job interview *after* IKEA was admittedly aware that he filed a charge of discrimination.[91]  Cathy Blair, IKEA's Talent and Succession Manager until 2017, testified in 2018 that she no longer had documents relating to age based personnel goals because she had deleted them a few years ago from her computer.[92]

Thirteenth, the only reasonable inference to be drawn from either circumstance (whether IKEA deleted the emails after or before the Court's Order) is that IKEA intentionally deleted them because they contained material evidence that would undermine IKEA's arguments that these cases should not proceed as collective actions under the pattern or practice framework.

**Prejudice**

Where evidence was destroyed in bad faith, "the burden shifts to the spoliating party to show lack of prejudice. A bad faith spoliator carries a heavy burden to show lack of prejudice because [a] party who is guilty of intentionally [destroying] documents ... should not easily be able to excuse the misconduct by claiming that the vanished documents were of minimal import." *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 319 (D. Del. 2013).

---

[91] See Saint-Antoine Declaration at par. ___.  Named Plaintiff Donofrio reserves his right to seek a remedy, including asking for an adverse interest instruction, in connection with Ms. Spenser's deletion of her notes.
[92] *See* Saint-Antoine Declaration ¶65.

IKEA's actions were done in bad faith and defiance of Court Order, and IKEA cannot meet its burden to demonstrate that Plaintiffs have not been prejudiced.  In fact, Plaintiffs have suffered significant prejudice as a result of IKEA's actions.

First and foremost, IKEA deleted emails from top level, admittedly "key" players crucial to the standard operating procedure/policy of age discrimination at the heart of Plaintiffs' ability to a) defeat a challenge to second stage certification as a collective action; and b) prove a pattern or practice of age discrimination under the *Teamsters* burden-shifting framework.

Second, Plaintiffs spent a great amount of attorney time and resources negotiating the parameters of the ESI search that IKEA now claims does not exist.  If the emails of key players had been deleted before the Court ordered their production, why did IKEA not tell Plaintiffs (or the Court) when it first received Plaintiffs' list of proposed custodians in <u>December, 2011</u>?

Third, the case has been delayed awaiting the production of emails that were deleted.  If the emails were deleted before the Court ordered their production, why did IKEA wait more than <u>eleven months</u> since the April, 2022 Order to tell Plaintiffs?

Fourth, Plaintiffs have expended considerable attorney time and resources trying to get a straight answer from IKEA regarding whether it searched the emails and in preparing this Motion.

**C.      The Court Should Impose Severe, but Not Case Dispositive, Sanctions Against IKEA.**

IKEA's bad faith conduct and the resulting prejudice to Plaintiffs warrant severe sanctions here.  A party should not be permitted to defy a Court Order because it does not like it or thinks compliance might be unduly burdensome when the Court has already specifically rejected that argument.

Whether acting under the authority of Fed.R.Civ.P. 37(b), its inherent powers, or Fed.R.Civ.P. 37(e)(2), the Court is authorized to issue case dispositive sanctions. Plaintiffs, however, do not seek them here. The material evidence that IKEA deleted goes to IKEA's standard operating procedure/pattern or practice of systemic age discrimination. However, it is unlikely that it would bear in particular on an individual opt-in's rejection. Accordingly, the Court should impose a sanction that is weighty and acts to deter future parties from engaging in similar bad faith behavior to that of IKEA. Sanctions should address the prejudice to Plaintiffs' ability to prove that IKEA has engaged in a pattern or practice of age discrimination, which is essential to their ability to satisfy second stage certification and meet their burden under the *Teamsters* framework. However, the sanctions should not preclude IKEA's ability to demonstrate at the second stage of a pattern or practice trial that each opt-in was rejected for promotion for a lawful reason. Accordingly, Plaintiffs respectfully request that the Court sanction IKEA as follows:

1. Enter a finding that IKEA has violated the Court's April 29, 2022 Order.

2. Enter a finding that IKEA has intentionally destroyed material evidence, acted in bad faith, and has significantly prejudiced Plaintiffs.

3. Enter a finding that it is established for purposes of second stage certification and trial that IKEA had in place age-based personnel goals favoring younger employees for leadership development and management level positions.

4. Enter a finding that Defendants had in place a corporate policy and/or standard operating procedure, to which all of its retail employees were subject, of favoring younger people in leadership development and management level positions, which was considered by IKEA in selection decisions for management level position, including applications for promotions.

5. Enter a finding that Defendants are estopped from asserting that the opt-in plaintiffs in these cases are not similarly situated to the Named Plaintiffs or that IKEA did not engage in a pattern or practice of age discrimination.

6. Enter a finding that Defendants engaged in a pattern or practice of age discrimination during the "class period," and direct that, at the close of the discovery period, these cases shall proceed to Stage Two of the burden shifting framework at trial.

7. Direct IKEA to pay to Plaintiffs reasonable attorneys' fees for services performed by Console Mattiacci Law to negotiate the ESI search and bring this Motion, with an application for fees to follow.

## V.      CONCLUSION.

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter the

proposed Order submitted herewith.

Respectfully submitted,

**CONSOLE MATTIACCI LAW, LLC**
/s/ Susan M. Saint-Antoine
Stephen G. Console
Laura C. Mattiacci
Susan M. Saint-Antoine
Caren N. Gurmankin
Colin Saltry
Evelyn Kallenbach
1525 Locust Street, 9th Fl.
Philadelphia, PA 19102
(215) 545-7676 (phone)
(215) 545-8211 (fax)
Attorneys for Named Plaintiffs,
Frank Donofrio, Brandon Paine and William
Antonelli (*on behalf of themselves individually and
on behalf of those similarly situated*)

May 4, 2023